**ORIGINAL**

**FILED**
JAN 1 6 2009
U.S. COURT OF
FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PETER H. BEER,
TERRY J. HATTER, JR.,
THOMAS F. HOGAN,
RICHARD A. PAEZ,
JAMES ROBERTSON,
LAURENCE H. SILBERMAN, and
A. WALLACE TASHIMA,

    *Plaintiffs,*

v.

UNITED STATES OF AMERICA,

    *Defendant.*

Case No. 09- 37 C

## COMPLAINT

The Framers of the Constitution recognized that an independent judiciary is a cornerstone of a free society, and that judicial independence hinges in part on insulating judicial compensation from the political process. Thus, the Framers specified in Article III that federal judges' "Compensation ... shall not be diminished during their Continuance in Office." U.S. Const. Art. III § 1. This case calls upon the courts to enforce that provision, and to invalidate legislation diminishing the compensation that Congress previously promised to federal judges. In particular, Congress promised federal judges cost-of-living salary adjustments in the Ethics Reform Act of 1989, Pub. L. 101-194, 103 Stat. 1716 (1989), but withheld those salary adjustments in contravention of the 1989 Act for fiscal years 1995, 1996, 1997, 1999, and 2007. Although a divided panel of the Federal Circuit held in 2001 that the 1989 Act did not vest federal judges with any right to future salary adjustments within the meaning of the Compensation Clause of Article III, *see Williams v. United States*, 240 F.3d 1019, that decision was criticized by several other judges of the Federal Circuit in dissenting from the denial of

rehearing en banc, *see Williams v. United States*, 264 F.3d 1089 (Mayer, C.J., joined by Newman and Rader, JJ.); *id.* at 1093 (Newman, J., joined by Mayer, C.J. and Rader, J.), and by three Justices of the Supreme Court in dissenting from the denial of certiorari, *see Williams v. United States*, 535 U.S. 911 (2002) (Breyer, J., joined by Scalia and Kennedy, JJ.). Plaintiffs respectfully submit that the Federal Circuit's *Williams* decision is wrong, and poses a profound threat to judicial independence. Accordingly, plaintiffs seek by this lawsuit to overturn it, and thereby to prevent the unconstitutional diminution of the compensation promised to them by the 1989 Act.

### PARTIES

1.  Plaintiff Peter H. Beer is a judge on the United States District Court for the Eastern District of Louisiana. Judge Beer was appointed to that position by President Jimmy Carter, and entered into service on December 7, 1979. He assumed senior status on April 12, 1994.

2.  Plaintiff Terry J. Hatter, Jr. is a judge on the United States District Court for the Central District of California. Judge Hatter was appointed to that position by President Jimmy Carter, and entered into service on December 20, 1979. From 1998 to 2001, he served as Chief Judge of the court, and he assumed senior status on April 22, 2005.

3.  Plaintiff Thomas F. Hogan is a judge on the United States District Court for the District of Columbia. Judge Hogan was appointed to that position by President Ronald Reagan, and entered into service on October 4, 1982. From 2001 to 2008, he served as Chief Judge of the court, and he assumed senior status on May 1, 2008.

4.  Plaintiff Richard A. Paez is a judge on the United States Court of Appeals for the Ninth Circuit. Judge Paez was appointed to that position by President Bill Clinton, and entered into service on March 17, 2000. Judge Paez previously served as a judge on the United States

District Court for the Central District of California. He was appointed to that position by President Bill Clinton, and entered into service on July 11, 1994. He served in that position until his entry into service on the Ninth Circuit.

5. Plaintiff James Robertson is a judge on the United States District Court for the District of Columbia. Judge Robertson was appointed to that position by President Bill Clinton, and entered into service on October 11, 1994. He assumed senior status on December 31, 2008.

6. Plaintiff Laurence H. Silberman is a judge on the United States Court of Appeals for the District of Columbia Circuit. Judge Silberman was appointed to that position by President Ronald Reagan, and entered into service on October 28, 1985. He assumed senior status on November 1, 2000.

7. Plaintiff A. Wallace Tashima is a judge on the United States Court of Appeals for the Ninth Circuit. Judge Tashima was appointed to that position by President Bill Clinton, and entered into service on January 4, 1996. He assumed senior status on June 30, 2004. Judge Tashima previously served as a judge on the United States District Court for the Central District of California. He was appointed to that position by President Jimmy Carter, and entered into service on June 30, 1980. He served in that position until his entry into service on the Ninth Circuit.

8. Defendant the United States of America employs the plaintiff judges, and is responsible for paying their salaries.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under the Tucker Act, which confers upon this Court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress ... in cases not sounding in tort." 28 U.S.C. § 1491(a)(1); *see also Hatter v. United States*, 953 F.2d 626, 627 (Fed. Cir. 1992)

("[T]he Tucker Act gives the Claims Court jurisdiction over claims of salary diminution under Article III of the Constitution.").

10. Venue in this court is also proper under the Tucker Act.

## FACTUAL BACKGROUND

### The Ethics Reform Act of 1989

11. This case arises out of the Ethics Reform Act of 1989, Pub. L. 101-194, 103 Stat. 1716 (1989), which, among other things, brought about substantial changes with respect to judicial compensation. In particular, the Act sharply limited federal judges' ability to earn outside income, but in exchange protected judicial income from inflation by establishing a system for judges to receive annual salary adjustments in future years.

12. The 1989 Act established judicial salary adjustments in express and unambiguous terms, providing that each year "each [judicial] salary rate ... *shall* be adjusted by an amount ... as determined under section 704(a)(1)" whenever the salaries of General Schedule (GS) employees (*i.e.*, federal civil servants) were adjusted. 28 U.S.C. § 461(a)(1) (emphasis added). The judicial salary adjustment formula set forth in section 704(a)(1) starts with the annual change in the Employment Cost Index (ECI), a measure of private-sector salaries published by the Bureau of Labor Statistics, and then subtracts 0.5%. *See id.*; 5 U.S.C. § 5318 note. In no event may such a judicial salary adjustment exceed either (1) the annual salary increase, if any, for GS employees, or (2) 5%. *See* 28 U.S.C. § 461(a)(2); 5 U.S.C. § 5318 note. Under the law as it existed then (and continues to exist now), GS employees are entitled to automatic annual salary adjustments unless the President determines that there is either (1) a "national emergency," or (2) serious economic conditions affecting the general welfare." 5 U.S.C. § 5303(b)(1).

13. The 1989 Act took effect on January 1, 1990, and judicial salaries were duly adjusted as required by the Act for each of the first three fiscal years (1991, 1992, and 1993).

4

For fiscal year 1994, the President denied GS employees a salary adjustment by invoking the statutory exception for "serious economic conditions" (namely, a massive federal budget deficit).

14. For each of the three next fiscal years (1995, 1996, and 1997), however, the judicial salary adjustments dictated by the 1989 Act did not take effect, even though in each of those years the salaries of GS employees were adjusted. That happened because, in each of those years, Congress included in appropriations legislation language stating that, other laws to the contrary notwithstanding, the salaries of federal judges would not be adjusted. *See* Pub.L. 103-329, § 630(a)(2), 108 Stat. 2382, 2424 (FY 1995); Pub.L. 104-52, § 633, 109 Stat. 468, 507 (FY 1996); Pub.L. 104-208, § 637, 110 Stat. 3009, 3009-364 (FY 1997). While the judicial salary adjustments dictated by the 1989 Act took effect for fiscal year 1998, Congress once again blocked those adjustments for fiscal year 1999. *See* Pub.L. 105-277, § 621, 112 Stat. 2681, 2681-518 (FY 1999). The judicial salary adjustments dictated by the 1989 Act once again took effect for fiscal years 2000 and 2001. The salary adjustments provided for fiscal years 1998, 2000, and 2001 were calculated by reference to base compensation that did not include the salary adjustments withheld for fiscal years 1995, 1996, 1997, and 1999.

15. In 2001, Congress enacted legislation automatically blocking any future salary adjustments for federal judges unless specifically approved by Act of Congress. *See* Pub.L. 107-77, Title VI, § 625, Nov. 28, 2001, 115 Stat. 748, 803 (2001), *codified in relevant part at* 28 U.S.C. § 461 note. In essence, Congress thereby attempted to undo the system established by the 1989 Act, which had tied judicial salary adjustments to the virtually automatic GS employee salary adjustments.

16. Notwithstanding the 2001 statute, Congress gave federal judges the salary adjustments promised by the 1989 Act for fiscal years 2002, 2003, 2004, 2005, 2006, and 2008

by enacting legislation specifically approving those adjustments. *See* Pub.L. 107-77, Title III, § 305, Nov. 28, 2001, 115 Stat. 748 (FY 2002); Pub.L. 108-6, § 1, Feb. 13, 2003, 117 Stat. 10 (FY 2003); Pub.L. 108-167, § 1, Dec. 6, 2003, 117 Stat. 2031 (FY 2004); Pub.L. 108-491, § 1, Dec. 23, 2004, 118 Stat. 3973 (FY 2005); Pub.L. 108-447, Div. B, Title III, § 306, Dec. 8, 2004, 118 Stat. 2895 (FY 2005); Pub.L. 109-115, Div. A, Title IV, § 405, Nov. 30, 2005, 119 Stat. 2470 (FY 2006); Pub.L. 110-161, Div. D, Title III, § 305, Dec. 26, 2007, 121 Stat. 1989 (FY 2008). For fiscal year 2007, however, Congress failed to enact such legislation, so the judges received no salary adjustments. The salary adjustments provided for fiscal years 2002, 2003, 2004, 2005, 2006, and 2008 were calculated by reference to base compensation that did not include the salary adjustments withheld for fiscal years 1995, 1996, 1997, 1999, and 2007.

### The *Williams* Litigation

17. In 1997, several federal judges sued the United States for withholding the salary adjustments promised in the 1989 Act for fiscal years 1995, 1996, and 1997 (and, subsequently, 1999). The plaintiffs brought a putative class action on behalf of all similarly situated federal judges in the U.S. District Court for the District of Columbia under the so-called Little Tucker Act, 28 U.S.C. § 1346(a)(2), seeking both back pay and declaratory relief. The district court granted the *Williams* plaintiffs summary judgment, holding that they had "vested" in the future salary adjustments promised in the 1989 Act, and that Congress had therefore violated the Compensation Clause of Article III by enacting subsequent legislation blocking those salary adjustments. *See Williams v. United States*, 48 F. Supp. 2d 52 (D.D.C. 1999).

18. A divided panel of the Federal Circuit, however, reversed. *See Williams v. United States*, 240 F.3d 1019 (Fed. Cir. 2001). The majority interpreted the Supreme Court's decision in *United States v. Will*, 449 U.S. 200 (1980), to establish the rule that a promised future judicial salary adjustment does not "vest" for purposes of the Compensation Clause until a judge *actually*

*receives* the adjusted salary, regardless of how explicit the promise of a future adjustment. *See* 240 F.3d at 1029. Under this view, in other words, Congress may not reduce a salary a judge has already received, but need not honor a promise of a future salary adjustment. *See id.* Judge Plager dissented from the panel decision, *see* 240 F.3d at 1040-64, and three judges dissented from the denial of rehearing *en banc*, *see* 264 F.3d at 1090-93 (Mayer, C.J., joined by Newman and Rader, JJ.); *id.* at 1093-94 (Newman, J., joined by Mayer, C.J. and Rader, J.).

19. The *Williams* plaintiffs thereupon petitioned for review in the U.S. Supreme Court, but their petition was denied over the spirited dissent of three Justices. *See Williams v. United States*, 535 U.S. 911 (2002) (Breyer, J., joined by Scalia and Kennedy, JJ., dissenting from denial of certiorari). Those three Justices specifically rejected the Federal Circuit majority's assertion that *Will* had established a bright-line rule that a promised future salary adjustment could never "vest" for purposes of the Compensation Clause until a judge actually received the adjusted salary. *See id.* at 1224-25. Rather, those three Justices took the position that "vesting" was to be analyzed by reference to the reasonable expectations of judges in a promised future salary adjustment. *See id.* at 1225.

20. Plaintiffs respectfully submit that the *Williams* decision is wrong for the reasons set forth in that case by (a) the district court, (b) the dissenting judge on the Federal Circuit panel, (c) the three Federal Circuit judges who dissented from the denial of rehearing en banc, and (d) the three Justices who dissented from the denial of certiorari. At the very least, plaintiffs have a good faith belief that *Williams* should be reversed.

### The Injury To Plaintiffs

21. The *Williams* decision notwithstanding, the 1989 Act gave plaintiffs a reasonable expectation that they would receive the future salary adjustments specified by that statute. As

7

Justice Breyer, joined by Justices Scalia and Kennedy, put it in their dissent from the denial of certiorari in *Williams*:

> The [1989] Act mandates adjustments to judicial salaries; the adjustments are mechanical and precise; and they are to take place automatically, for they are tied to the adjustments provided to General Schedule employees which themselves are automatic but for the two possible exceptions. These features of the law assured federal judges ... that their real salaries would stay approximately level unless the real salaries of the average private sector worker or those of the typical civil servant declined significantly as well.

535 U.S. at 1222. In light of that reasonable expectation, plaintiffs acquired a vested interest in the promised salary adjustments within the meaning of the Compensation Clause of Article III, and Congress thereafter violated that constitutional provision by enacting legislation denying plaintiffs those promised adjustments in 1995, 1996, 1997, and 1999, and then enacting legislation denying plaintiffs those promised adjustments in any future year (such as 2007) when those adjustments are not affirmatively approved by Congress.

22. But for the unconstitutional diminution of judicial compensation in each of the five fiscal years described in the preceding paragraph, plaintiffs' base compensation would have been and should have been increased in each of those years, and hence each subsequent salary adjustment would and should have been calculated with reference to a higher base compensation. Accordingly, every unconstitutional diminution of judicial compensation gives rise to new injury and claims. *See, e.g., Hatter v. United States*, 203 F.3d 795, 797-800 (Fed. Cir. 2000) (*en banc*), *aff'd in part, rev'd in part on other grounds*, 532 U.S. 557 (2001).

## COUNT ONE
### Legislation Blocking The Salary Adjustments Promised In The 1989 Act Violates The Compensation Clause of Article III

23. Plaintiffs incorporate the allegations in the foregoing paragraphs as if fully set forth herein.

24. Because the 1989 Act gave plaintiffs a vested interest in future salary adjustments pursuant to the terms of that statute, subsequent legislation blocking those adjustments unlawfully diminished, and continues unlawfully to diminish, plaintiffs' compensation in violation of the Compensation Clause of Article III of the United States Constitution.

25. But for the system of salary adjustments established by the 1989 Act, the corresponding provisions of that Act sharply limiting federal judges' ability to earn outside income would have violated the Compensation Clause.

26. As a remedy for the constitutional violation set forth herein, plaintiffs are entitled to back pay and declaratory relief. "This provision of the Constitution ... mandates the payment of money in the event of a prohibited compensation diminution. ... [B]y forbidding any diminution of judicial compensation, the Constitution itself requires repayment of prohibited reductions in compensation to Article III judicial officers." *Hatter*, 953 F.2d at 628.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully pray that this Court:

1. Grant them the salary adjustments promised to them by the 1989 Act but withheld in violation of the Compensation Clause of Article III;

2. Grant them the salary adjustments promised to them by the 1989 Act calculated by reference to the base salary to which they would have been entitled but for the unlawful withholding of prior salary adjustments promised to them by the 1989 Act;

3. Declare that Congress may not in the future withhold the salary adjustments promised to them by the 1989 Act;

4. Declare that the future salary adjustments promised to them by the 1989 Act must be calculated by reference to the base salary to which they would have been entitled but for the unlawful withholding of prior salary adjustments promised to them by the 1989 Act; and

5. Grant them such other and further relief as this Court may deem just and proper.

Respectfully submitted this 16th day of January, 2009.

_____
Christopher Landau, P.C.
*Attorney of Record*
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW, Suite 1200
Washington, DC  20005
(202) 879-5000 (phone)
(202) 879-5200 (fax)
clandau@kirkland.com

*Of Counsel*:

Patrick F. Philbin
Angela Butcher
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW, Suite 1200
Washington, DC  20005
(202) 879-5000 (phone)
(202) 879-5200 (fax)
pphilbin@kirkland.com
abutcher@kirkland.com