# In the United States Court of Federal Claims

No. 09-37C
(Filed: June 11, 2013)

* * * * * * * * * * * * * * * * * * * *

PETER H. BEER, et al.,

                    *Plaintiffs*,

v.

UNITED STATES,

                    *Defendant*.

Compensation Clause of Article III; damages; prejudgment interest; deductions; Federal Employees' Group Life Insurance Program; tax withholdings.

* * * * * * * * * * * * * * * * * * * *

*Christopher Landau*, with whom were *John C. O'Quinn*, and *K. Winn Allen*, Washington, DC, for plaintiffs.

*Loren Misha Preheim*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, with whom were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Reginald T. Blades, Jr.*, Assistant Director, for defendant.

## OPINION

BRUGGINK, *Judge.*

This is an action for back pay brought pursuant to Article III of the United States Constitution. The matter is pending on remand from the United States Court of Appeals for the Federal Circuit. *Beer v. United States*, 696 F.3d 1174 (Fed. Cir. 2012), *cert. denied*, 133 S. Ct. 1997 (2013). After finding for the plaintiffs on liability, the Federal Circuit directed this court to determine, as damages, "the additional compensation to which appellants were entitled since January 13, 2003–the maximum period for which they can seek relief under the applicable statute of limitations." *Id.* at 1187.

On January 18, 2013, we denied defendant's motion to stay proceedings

pending the outcome of its petition for certiorari before the Supreme Court. We then directed the parties to file simultaneous briefs as to the correct calculation of damages.  On February 22, 2013, the parties filed initial briefs and filed response and reply briefs thereafter.  Because there are other cases pending which raise similar issues and because those cases are not as far along procedurally, we invited and received amicus briefs.  On April 22, 2013, the Supreme Court denied defendant's petition for certiorari.  *United States v. Beer*, 133 S. Ct. 1997 (2013).  We held oral argument as to the correct calculation of damages on May 31, 2013.  For the reasons set out below, the net back pay award will be calculated without including prejudgment interest on the lost pay attributable to withheld cost of living increases in 2007 and 2010, without deduction of additional life insurance premiums, and with prejudgment interest on a pre-tax basis.

## BACKGROUND

Plaintiffs are six federal judges[1] who make a claim for back pay under the Compensation Clause of Article III of the Constitution, which provides that "Judges . . . shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office."  U.S. Const. art. III, § 1.  Because the clause "requires repayment of prohibited reductions in compensation to Article III judicial officers," *Hatter v. United States*, 953 F.2d 626, 628 (Fed. Cir. 1992), it constitutes a "source of substantive law that creates the right to money damages."  *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) (citing *United States v. Mitchell*, 463 U.S. 206, 216 (1983)).  Plaintiffs thus state a claim within the court's Tucker Act jurisdiction.  *See* 28 U.S.C. § 1491(a)(1) (2006) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress . . . .").

---

[1] Four of the plaintiffs are currently in senior status, one is in regular active service, and one is retired.  By agreement of the parties, the distinction matters with respect to Medicare deductions, to which retired judges and judges in senior status are not subject.  *See* 26 U.S.C. § 3121(i)(5) (2006).  Plaintiffs also note that one plaintiff "retired in January 2009 and therefore does not receive any increases in salary after 2009."  Pls.' Status Report, Exh. A at 2 (May 6, 2013).

Plaintiffs initially also sought as relief a declaration by the court that "Congress may not in the future withhold the salary adjustments promised to them . . . ." Compl. ¶ 3 (Prayer for Relief). On May 3, 2013, plaintiffs filed a status report in which they voluntarily dismissed the complaint's request for declaratory relief. Accordingly, the only issue remaining is back pay.

It is the law of this case that Congress improperly reduced plaintiffs' compensation and violated the Constitution by withholding cost of living adjustments ("COLAs") from their pay, which were assured under the Ethics Reform Act of 1989, Pub. L. No. 101-194, § 704, 103 Stat. 1716, 1769 (hereinafter "1989 Act"). The 1989 Act provides that, when General Schedule employees receive a pay increase,[2] Article III judges also receive an increase, pursuant to a precise formula.[3] *See id.* § 704.

In some years when General Schedule employees received adjustments to pay, Congress passed laws blocking COLAs for judges. It did so for the fiscal years of 1995, 1996, 1997, and 1999.[4] COLAs were also withheld in 2007 and 2010, although not because Congress passed blocking legislation to prevent those pay increases. Instead, Congress relied on an interpretation of an amended statute, originally passed as Pub. L. No. 97-92, § 140, 95 Stat. 1183, 1200 (1981) (hereinafter "Section 140"), which provided that appropriations to increase pay for federal judges had to "be specifically authorized by Act of Congress hereafter enacted." This authorization requirement expired, however, in 1982. *Williams v. United States*, 240 F.3d 1019, 1026-27 (Fed. Cir. 2001).

---

[2] General Schedule COLAs occur every year unless the President acts to stop the increase "because of [a] national emergency or serious economic conditions affecting the general welfare." 5 U.S.C. § 5303(b)(1) (2012).

[3] *See Beer*, 696 F.3d 1174, 1177 (explaining the formula).

[4] Pub. L. No. 103-329, § 630(a)(2), 108 Stat. 2382, 2424 (1994); Pub. L. No. 104-52, § 633, 109 Stat. 468, 507 (1995); Pub. L. No. 104-208, § 637, 110 Stat. 3009, 3009-364 (1996); Pub. L. No. 105-277, § 621, 112 Stat. 2681, 2681-518 (1998).

Congress amended Section 140 on November 28, 2001, to state that "[t]his section shall apply to fiscal year 1981 and each fiscal year thereafter." Pub. L. No. 107-77, § 625, 115 Stat. 748, 803. Acting on the belief that it then needed to pass specific legislation to authorize COLAs, Congress passed legislation to that effect for fiscal years 2002, 2004, 2005, 2006, and 2008.[5] Congress failed to pass legislation in 2007 and 2010 with the result that judges did not receive COLAs in those years.

Plaintiffs filed their complaint on January 16, 2009.[6] We initially dismissed on the basis of *Williams*. Plaintiffs appealed. On October 5, 2012, the Federal Circuit overruled *Williams* in its en banc decision in this case. *Beer*, 696 F.3d at 1176-77. The Federal Circuit held that "the 1989 Act triggered the Compensation Clause's basic expectations and protections," because it made a "precise and definite commitment to automatic yearly cost of living adjustments for sitting members of the judiciary." *Id.* at 1177. The legislation that blocked COLAs in 1995, 1996, 1997, and 1999, "broke this commitment and effected a diminution in judicial compensation." *Id.* at 1185.

The court of appeals also held that "federal judges should have received the adjustments in 2007 and 2010." *Id.* at 1185. Congress's belief that it had to specifically authorize pay increases after the 2001 amendment to Section 140 was "an erroneous statutory interpretation." *Id.* at 1186. The 2001 amendment only made "permanent whatever effect the provision had when originally enacted" in 1981. *Id.* Although Section 140 required that, after 1981, pay increases had to be specifically authorized, the 1989 Act satisfied that requirement. *Id.*

The Federal Circuit concluded that plaintiffs must be compensated "for

---

[5] Pub. L. 107-77, § 305, 115 Stat. 748, 783 (2001); Pub. L. 108-6, § 1, 117 Stat. 10, 10 (2003); Pub. L. 108-167, § 1, 117 Stat. 2031, 2031 (2003); Pub. L. 108-447, § 306, 118 Stat. 2809, 2895 (2004); Pub. L. 108-491, § 1, 118 Stat. 3973, 3973 (2004); Pub. L. 109-115, § 405, 119 Stat. 2396, 2470 (2005); Pub. L. 110-161, § 305, 121 Stat. 1844, 1989 (2007).

[6] Plaintiffs amended the complaint to add 2010 as a year in which they allege the wrongful withholding of COLAs. *Beer*, 696 F.3d at 1186 ("Appellants' motion to amend their complaint to include a challenge to the 2010 withholdings is granted.").

the diminished amounts they would have been paid if Congress had not withheld the salary adjustments mandated by the Act." *Id.* at 1186. The court remanded the case for calculation of damages.

## DISCUSSION

The Federal Circuit directed this court to determine damages to which appellants were entitled after January 13, 2003. *Id.* at 1187.[7] This compensation must "incorporate the base salary increases which should have occurred in prior years." *Id.* The parties filed briefs setting forth their respective positions as to calculation of back pay due from January 2003, the first pay period not barred by the statute of limitations. *See* 28 U.S.C. § 2501 (2006). The calculations are in agreement as to the total amount of gross lost pay. The parties also agree on certain adjustments. They agree that gross pay should be reduced by the additional payments, if any, that a judge would have made to the Judicial Survivors' Annuity System ("JSAS") in each year.[8] Both sides also agree that income tax should be withheld from the net pay award at a standard rate of 28 percent, *see* 26 U.S.C. § 3402(a) (2006); 26 C.F.R. § 31.3402(g)–1(a)(7) (2012), that judges who were in regular active service should have their back pay reduced by 1.45 percent for Medicare taxes,[9] and that compound interest accumulates on net pay pursuant to a rate determined

---

[7] Plaintiffs filed their complaint on January 16, 2009, not January 13. It makes no difference in the calculation of damages.

[8] The JSAS program provides an annuity to a judge's beneficiaries. *See* 28 U.S.C. § 376 (2006). A judge who joins the program "shall be deemed thereby to consent and agree to having deducted and withheld from his or her salary a sum equal to 2.2 percent of that salary, and a sum equal to 3.5 percent of his or her retirement salary." *Id.* § 376(b)(1).

[9] *See* Social Security & Medicare Tax Rates, Social Security Online (March 8, 2012), http://www.ssa.gov/oact/progdata/taxRates.html. The figure is 2.35 percent for amounts in excess of $200,000 per year. Internal Revenue Service, U.S. Dep't of Treasury, Pub. No. 15, (Circular E), Employer's Tax Guide 2 (2013).

under 28 U.S.C. § 1961 (2006),[10] at least with respect to the four pre-2007 COLAs.

There remain three issues on which the parties disagree: whether interest accumulates on back pay with respect to the 2007 and 2010 COLAs; whether judges enrolled in the Federal Employees' Group Life Insurance Program should have their gross pay reduced by the higher premiums that would have resulted if the COLAs actually had been paid; and whether interest should be calculated before or after application of income and Medicare tax withholdings.

I.  Whether Back Pay Attributable To The 2007 And 2010 COLAs Earns Interest.

Defendant concedes that plaintiffs should recover interest on back pay attributable to the omission of COLAs for 1995, 1996, 1997, and 1999.  The Federal Circuit made clear that blocking these COLAs was a violation of Article III, Section I of the Constitution.  Defendant does not challenge the imposition of compound interest as to those omitted COLAs, and we believe the discussion in *Hatter v. United States*, 38 Fed. Cl. 166, 182-83 (1997), *rev'd on other grounds*, 185 F.3d 1356 (Fed. Cir. 1999), correctly explains why there is no need to find a separate waiver of sovereign immunity for payment of prejudgment interest to complete the relief to which plaintiffs are entitled for a constitutional violation.  Defendant objects, however, to paying interest with respect to the COLAs that should have occurred in 2007 and 2010.

Defendant correctly notes that, absent a waiver of sovereign immunity, interest is generally not allowed in a claim against the United States.  *Library*

---

[10] Plaintiffs explain that interest accrues according to "the average weekly rate of the 1-year constant maturity Treasury yield for the last published week of the preceding calendar year.  Interest is compounded on January 1 of each year.  A mid-year earnings convention is used to calculate prejudgment interest in the year in which salary is lost."  Pls.' Status Report, Exh. A at 2 n.2 (May 6, 2013).  Defendant accepts this methodology.  *See* Def.'s Resp. Brief Regarding Back Pay Calculations 4 ("Although we used a more precise methodology that results in a difference of $1.00 to $2.00 per month for future prejudgment interest after February 2013, plaintiffs' methodology would be substantially correct.").

*of Congress v. Shaw*, 478 U.S. 310, 317 (1986).  Defendant's point is that, while the complaint asserted liability only under the Compensation Clause, the Federal Circuit in *Beer* went to some lengths to limit the basis of its ruling as to the later COLAs:

> Turning now to the second question, this court determines that the 2001 amendment to Section 140 of Pub. L. 97-92 has no effect on the compensation due to judges.  Unlike the preceding discussion of the Compensation Clause, this is a question of statutory interpretation.  Without a statutory basis for withholding the COLAs, federal judges should have received the adjustments in 2007 and 2010.   These adjustments are payable to the judges *regardless of constitutional protections*. Congress simply had no statutory authority to deny them.

696 F.3d at 1185 (emphasis added).  Counsel for defendant candidly conceded at oral argument that there was no principled reason that failure to pay the later COLAs could not also be considered a constitutional violation.  His point, however, was that the Federal Circuit plainly decided the latter issue only as a matter of statutory entitlement.  *See id.* at 1186 ("The Government withheld COLAs from judges in 2007 and 2010 solely because the government misinterpreted Section 140 . . . .").  Defendant argues that it would violate the Federal Circuit's mandate to go beyond the circuit court's holding and resolve the question of whether withholding the 2007 and 2010 COLAs was also unconstitutional.

Plaintiffs counter that, on remand, "[o]nly the issues actually decided–those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court–are foreclosed from further consideration."  *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999) (citing *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 170 (1939)).  Nevertheless, we do not view this legal proposition as dispositive. While the Federal Circuit did not specifically address whether omission of the later COLAs generates prejudgment interest, the plain import of the mandate was that we are only to calculate damages; the issue of liability has been resolved.  As we explain above, the Federal Circuit felt that it was unnecessary to resolve whether withholding the 2007 and 2010 COLAs was a constitutional violation because plaintiffs are clearly entitled to the COLAs by operation of the 1989 Act.

The Tucker Act permits the court to hear claims based upon "any Act of Congress."  28 U.S.C. § 1491(a)(1).  The Ethics Reform Act of 1989 is an act of Congress and is plainly money-mandating.  *See generally Fisher*, 402 F.3d at 1172 (requiring plaintiffs to "identify a separate source of substantive law" giving the right to money damages).  Although the Federal Circuit presumably also could have found that failure to pay the 2007 and 2010 COLAs amounted to an unconstitutional diminishment of compensation, the court made clear that it was unnecessary to do so.

Justice Brandeis' concurrence in *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288 (1936), is often cited for the proposition that a federal court

> will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.  This rule has found most varied application.  Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.

*Id.* at 347; *see also Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876, 918 (2010) (Roberts, C.J., concurring) ("Our standard practice is to refrain from addressing constitutional questions except when necessary to rule on particular claims before us.") (citing *Ashwander*, 297 U.S. at 346-48); *Hathaway v. Merit Sys. Prot. Bd.*, 981 F.2d 1237, 1243 n.8 (Fed. Cir. 1992) (citing *Ashwander*, 297 U.S. at 347).

We believe that principle applies here.  While plaintiffs have the right to cast their complaint exclusively in terms of a constitutional claim, we will not presume to dictate to the circuit court that it should have gone further than necessary to resolve the case.  Nor do we agree with plaintiffs' suggestion that this court is obligated to pursue the alternative ground for liability in order to furnish plaintiffs a complete remedy.  The remedy for violation of the 1989 Act is complete without an interest award.  It would be overreaching for this court to insist on an alternative holding simply to facilitate an additional remedy.

II.  Whether Higher Insurance Premiums Should Be Retroactively Imposed.

All of the plaintiffs elected, during the years at issue, to participate in the Federal Employees' Group Life Insurance ("FEGLI") Program.  They each were enrolled in the basic plan and, with one exception, also opted for some level of Option B coverage, which consists of multiples of a judge's salary.  Because the coverage and premiums for these plans are directly correlated to salary, defendant asserts that we must retroactively withhold additional premiums from back pay to reflect the higher coverage the judges presumably would have elected to retain if the COLAs actually had been paid during the years at issue.

Defendant relies on section 8707 of title 5 of the United States Code, which states in relevant part that "during each period in which an employee is insured under a policy purchased by the Office of Personnel Management under section 8709 of this title, there shall be withheld from the employee's pay a share of the cost of the group life insurance and accidental death and dismemberment insurance." 5 U.S.C. § 8707(a) (2012). The statute references the "period in which an employee is insured." *Id.* For the period for which they were insured, however, plaintiffs did in fact pay premiums commensurate with the coverage they received.  As plaintiffs correctly note, section 8707 does not answer the precise question raised in the present circumstances, namely, if the government improperly withheld salary in the past, should premiums be retroactively adjusted when that back pay is restored.

Moreover, the statute only requires the plaintiffs to "pay a share of the cost of the group life insurance." *Id.* Giving plaintiffs a retroactive pay raise does not simultaneously retroactively increase the cost to other insureds for the time period in question, nor do the plaintiffs claim any proportionately higher benefit.[11]  There is thus no requirement by statute to dun plaintiffs in arrears.

Without offering any other justification than the statute, defendant contends, nevertheless, that we must time travel into the past to reconstruct a "but for" world in which the correct salaries were received and then model

_____

[11] We are not faced here with the question of whether the estate of a judge who died during the period in question would be entitled to the higher benefit or would have to pay a retroactive higher premium to receive that benefit.

how plaintiffs would have behaved.  We decline the suggestion.  The insurance at issue is term coverage, and the relevant term is over.  None of these plaintiffs have died, so forcing them to pay additional premiums neither reimburses the government (or the private underwriter) for an expense incurred nor extracts from plaintiffs a payment for additional coverage from which they benefitted.  While counsel for defendant assured the court that any additional premiums extracted from the back pay award would be passed along to the private insurance company that underwrites FEGLI, defendant cites nothing in law or contract which requires the government to do so.[12]  In fact, we can say with certainty that, if the court did as the government proposes, and if those additional premiums are passed along to the private insurer, it is the insurer which would be receiving a windfall.  Needless to say, if the premiums were retained in the Treasury the government would be receiving the windfall.  We can also say with certainty that not requiring retroactive higher premiums provides no windfall to these plaintiffs.

We note, moreover, that insurance coverage is optional.  While the government makes the not unreasonable assumption that none of the plaintiffs would have opted out of their then-existing level of coverage, we cannot say that with certainty.  We note that at least one of the plaintiffs changed his level of coverage during the years at issue.  Although it may be unlikely, it is at least theoretically possible that these judges would have reevaluated their coverages in light of higher costs and benefits.  The point is that we could never recreate a pristine "but for" world.

As the parties admit, the cases on the question are less than consistent or principled.  The Court of Claims has directed the withholding of insurance premiums from back pay awards, either on the assumption that the plaintiffs were covered during the retroactive period "as a matter of law," *Paroczay v. United States*, 369 F.2d 720, 723 (Ct. Cl. 1966), or without explanation, *Clark*

_____

[12] Defendant cites title 5 of the Code of Federal Regulations, which directs that, "[w]hen an agency withholds less than or none of the proper amount of Basic life insurance deductions from an individual's pay . . . the agency must submit an amount equal to the sum of the uncollected deduction . . . to [the Office of Personnel Management]."  5 C.F.R. § 870.401(f) (2013).  This begs the question, however, of whether the proper amount was withheld.  We conclude that it was.

*v. United States*, 170 Ct. Cl. 898, 899 (1965); *Clark v. United States*, 156 Ct. Cl. 699, 699 (1962).  In *Russell v. United States*, 320 F.2d 920, 925-26 (Ct. Cl. 1963), however, the court came to a different result.  There, an employee had been suspended improperly from employment, and during his suspension, the FEGLI program was instituted.  *Id.* at 925.  The court granted back pay and held that the plaintiff did not have to pay a retroactive life insurance premium when it was unclear that he had received coverage during the period of removal.  *Id.* at 926.

In 1972, Congress addressed the issue raised by the above cases when it passed Pub. L. No. 92-529, 86 Stat. 1050 (codified at 5 U.S.C. § 8706(e) (2012)) (hereinafter "section 8706(e)").   Section 8706(e) states that "[d]eductions otherwise required by section 8707 of this chapter shall not be withheld from any back pay awarded for the period of separation or suspension unless death or accidental dismemberment of the employee occurs during such period."  5 U.S.C. § 8706(e).  Plaintiffs contend that this statute reflects a "principle that federal employees should not be forced to pay retroactive FEGLI premiums for retroactive FEGLI coverage they never received."  Pls.' Resp. 6.[13]  Not surprisingly, defendant draws the opposite inference: by only referencing separation or suspension in barring withholding (in the absence of death or dismemberment), Congress must have meant to require withholding in all other circumstances.  We decline to construe this paragraph as requested by either party.  It was adopted in response to the cases discussed above and therefore doesn't bear the weight of either inference.  We can only safely conclude that section 8706(e) does not directly answer the relevant question.

In sum, we find no support for the government's position that we are required by statute or precedent to reduce the back pay award by higher premiums for hypothetical coverage.  Nor would it promote fairness to do so.  As we note above, we would be forcing plaintiffs to pay for something they did not receive.  Back pay will be calculated without deduction for additional FEGLI premiums.

III.   Whether Interest Should be Calculated Before Or After Withholding Taxes Are Taken Out.

The parties agree that the entire back pay award each plaintiff receives

---

[13] "Pls.' Resp." refers to Plaintiffs' Response Brief on Damages.

must be treated as income in the year received.  On the assumption that the judgment will be paid this year, the amount each plaintiff receives, including interest, will be treated as income received in 2013.  It is also undisputed that back pay awards are subject to withholding taxes,[14] and the parties have agreed that the appropriate rate is 28 percent.  The effective income tax rate each plaintiff will ultimately pay for 2013 depends, of course, on individual circumstances.

The parties differ on the implication of these facts to the calculation of prejudgment interest.  The only deductions from gross lost income that plaintiffs take for any given year are for JSAS contributions.[15]  Against that annual net figure they apply interest.  Plaintiffs add those total amounts of lost income and cumulative interest for each year and then apply, to the resulting total, 28 percent in withholding taxes and, where appropriate, Medicare taxes. Plaintiffs' model thus applies a withholding to interest as well as lost wages.

Defendant's model, on the other hand, assumes that  taxes were taken out each year in the past (along with higher FEGLI premiums) before calculating interest.  Withholding taxes are thus not applied to interest in defendant's model.

The Supreme Court has offered some guidance in *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200 (2001).  That case also involved how to treat improperly withheld wages. *Id.* at 204.  The question was whether taxes under the Federal Insurance Contributions Act ("FICA") and Federal Unemployment Tax Act ("FUTA") should be calculated according to the year in which the wages should have been received or at the time of actual receipt. *Id.*  It mattered because FICA and FUTA tax rates and the taxable wage base increased in the interim. *Id.* at 205-06.  Although the parties both presented plausible interpretations of the tax provisions at issue, the Court ultimately adopted the position of the Internal Revenue Service and held that an award

---

[14] *See* 26 U.S.C. § 3402; 26 C.F.R. § 31.3402(a)–1 (2012).

[15] We agree with plaintiffs that retroactively increasing deductions for these contributions is not inconsistent with our holding above concerning life insurance.  Annuity contributions are credited separately on account for each individual. *See* 28 U.S.C. § 376(e).  Plaintiffs will receive a direct benefit for the retroactive contributions.

of back pay is taxed "according to the year the wages are actually paid, regardless of when those wages were earned or should have been paid." *Id.* at 219-20. Decisive for the Court was the Service's "reasonable, consistent, and longstanding interpretation of the FICA and FUTA provisions in point." *Id.* at 209. The Court rejected the taxpayer's concern that such a rule might lead to anomalous results or windfalls. *Id.* at 217. The Court recognized that some taxpayers would be penalized and some might benefit, but it deferred to the Service's interest in uniformity. *Id.* at 218.

Defendant points out that *Cleveland Indians* did not involve income tax and that the Court did not speak specifically in the context of the question here, namely, whether interest on the wages should be calculated pre- or post-tax. We note, however, that the Court referenced Revenue Ruling 78-336, 1978-2 C.B. 255,[16] as part of the Service's consistent "interpretation of its own regulations." 532 U.S. at 220. That ruling involved withholding income tax, rather than FICA or FUTA taxes. The logical inference is that the Court viewed treatment of income tax withholdings to be relevant to the issues in *Cleveland*.

And defendant can offer no reason to draw a distinction for income taxes. Instead, it argues that its model actually complies with *Cleveland Indians* and that "[t]he difference is primarily one of presentation rather than calculation: 28 percent of back pay for all years in the aggregate (as plaintiffs calculate) is equal to 28 percent of back pay for each single year, added together (as we calculate)." Def.'s Reply Brief 7.[17] The fact that the same tax rate is applied, however, does not mean that the government's model follows the direction of the Supreme Court in *Cleveland Indians*. Plainly, defendant's

---

[16] In its ruling, the Service addressed whether "a court ordered back pay award [is] subject to federal income tax withholding at the rates in effect at the time the award is paid or at the rates in effect during the period earned." Rev. Ruling 78-336, 1978-2 C.B. 255, 1978 IRB LEXIS 244 at *1. The agency ruled that "the back pay award ordered by the court is wages in the year paid, not in the year or years earned, and is subject to federal income tax withholding at the rates in effect at the time the award is paid." *Id.* at *3.

[17] "Def.'s Reply Brief" refers to Exhibit A of Defendant's Motion for Leave to File a Reply Brief to Plaintiffs' Response Brief on Damages.

model does not apply withholding only to the amount received in 2013. Defendant goes back into each prior year to apply the withholding amount. The total tax withheld may indeed be roughly equivalent under either methodology, but applying withholding retroactively has an impact in terms of prejudgment interest.

Defendant does not dispute that the income plaintiffs receive, including interest, will, in fact, be taxed as if it were all received in 2013. In the end, the government's real concern is that using plaintiffs' pre-tax approach would result in a windfall of prejudgment interest. Defendant argues that, as a practical matter, these plaintiffs would have paid some level of income tax contemporaneously with the receipt of the lost income, and thus the entire amount would not have been available to invest. It cites *Hillman v. United States Postal Service*, 257 F. Supp. 2d 1330, 1335 (D. Kan. 2003), for the proposition "that because plaintiff would not have had these funds to invest had she been in pay status during the back pay period, she is not entitled to interest on such funds."

Defendant is no doubt correct. Absent some unusual personal tax circumstances (a major loss in a prior year, for example), plaintiffs would have paid additional income tax at the time. Unlike the FUTA and FICA taxes at issue in *Cleveland Indians*, however, which are fixed percentages applied against fixed bases for any given year, the effective income tax rates for the past years at issue here will vary because of individual circumstances. The FICA and FUTA rates for earlier years actually were the then-applicable rates, and yet the Court accepted a calculation of tax based on the year of receipt. By contrast, the uniformity of an interim withholding rate (28 percent) camouflages the fact that the individual income tax rates would have varied. The court has no way of knowing how much income tax plaintiffs would have paid. Defendant offers no proof of its own, despite its admonition that we should put plaintiffs in the same position they would have been in absent the violation. There is therefore even less justification here to apply an arbitrary 28 percent on the fictional rationale that this would recreate an actual "but for" world.

In sum, the government can point to no clear statutory or regulatory authority nor any controlling precedent that requires interest to be calculated on an after-tax basis. Instead, it finds itself in the uncomfortable position of resorting to equity. We are particularly reluctant to accept that rationale, however, mindful that the interest at issue here is of a constitutional gravitas.

*See Hatter*, 38 Fed. Cl. at 182-83 (stating that the Compensation Clause requires payment to Article III judges "at stated Times" and that interest is necessary to correct violations of that requirement). In *Hillman*, on the other hand, and the case on which it relied, interest was not a matter of right and was subject to an abuse of discretion review standard. *See* 257 F. Supp. 2d at 1335 (citing *Greene v. Safeway Stores, Inc.*, 210 F.3d 1237, 1247 (10th Cir. 2000)); *see also Wirtz v. Kan. Farm Bureau Servs., Inc.*, 274 F. Supp. 2d 1215, 1223 & n.28 (D. Kan. 2003) (citing *Hillman* for the proposition that "[t]he decision of whether to award interest and the determination of the rate rest within sound discretion of the trial court"). Defendant therefore is directed to calculate interest on a pre-tax basis.

## CONCLUSION

Liability having been established, and based on the preceding, plaintiffs are entitled to back pay[18] calculated without adding prejudgment interest with respect to the 2007 and 2010 COLAs, without deducting additional FEGLI premiums, and with interest calculated on a pre-tax basis. The court informed the parties of this holding and asked them to agree on the amounts due each plaintiff through May 31, 2013. Based on the calculations in the attached appendix, the Clerk is directed to enter judgment for net back pay as follows:

| | |
|---|---|
| Judge Beer | $153,107.69 |
| Judge Clemon | $147,930.37 |
| Judge Hatter | $152,619.51 |
| Judge Paez | $160,056.26 |
| Judge Silberman | $163,155.08 |
| Judge Tashima | $162,811.90 |

Pursuant to 28 U.S.C. § 1491(a)(2), the Administrative Office of the United States Courts is directed to reflect in the plaintiffs' pay records the omitted COLAs, leading to a current annual rate of $197,100 for district court Judges Hatter and Beer, $194,200 for retired district court Judge Clemon, and $209,100 for circuit court Judges Paez, Silberman, and Tashima, along with the applicable withholdings as approved in this ruling.

---

[18] Plaintiffs' claim for declaratory relief was withdrawn.

15

Judgment accordingly.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Judge

# APPENDIX

**Lost Earnings, Interest and Payment Amount**
**For Pay Periods January 2003 through May 2013 [1]**

**(Peter H. Beer - District Judge)**

| Year | Allowable Compensation (A) | Actual Compensation (B) | Lost Compensation (A) - (B) (C) | Federal Income Taxes (C) x 28.0% (D) | Medicare Taxes (C) x 1.45% (E) | FEGLI Basic Premiums (F) | FEGLI Option B Premiums (G) | JSAS Contributions (C) x 2.20% (H) | Lost Earnings (Net Back Pay) (C) - SUM[(D)-(H)] (I) | Salary Increases Not Authorized In 2007 and 2010 (J) | Lost Earnings Subject to Interest (I) - (J) (K) | Cumulative Percent (L) | Amount (K) x (L) (M) | Net Back Pay Plus Interest (I) + (M) (N) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2003 | $ 169,800.00 | $ 154,700.00 | $ 15,100.00 | $ - | $ - [4] | $ - | $ - | $ 332.20 | $ 14,767.80 | -- | $ 14,767.80 | 20.23% | $ 2,987.55 | $ 17,755.35 |
| 2004 | 173,500.00 | 158,100.00 | 15,400.00 | - | - [4] | - | - | 338.80 | 15,061.20 | -- | 15,061.20 | 18.63% | 2,806.51 | 17,867.71 |
| 2005 | 177,800.00 | 162,100.00 | 15,700.00 | - | - [4] | - | - | 345.40 | 15,354.60 | -- | 15,354.60 | 16.32% | 2,506.56 | 17,861.16 |
| 2006 | 181,200.00 | 165,200.00 | 16,000.00 | - | - [4] | - | - | 352.00 | 15,648.00 | -- | 15,648.00 | 12.37% | 1,935.13 | 17,583.13 |
| 2007 | 184,300.00 | 165,200.00 | 19,100.00 | - | - [4] | - | - | 420.20 | 18,679.80 | 3,031.80 [2] | 15,648.00 | 7.37% | 1,152.58 | 19,832.38 |
| 2008 | 188,900.00 | 169,300.00 | 19,600.00 | - | - [4] | - | - | 431.20 | 19,168.80 | 3,031.80 [2] | 16,137.00 | 3.04% | 489.79 | 19,658.59 |
| 2009 | 194,200.00 | 174,000.00 | 20,200.00 | - | - [4] | - | - | 444.40 | 19,755.60 | 3,031.80 [2] | 16,723.80 | 1.10% | 184.15 | 19,939.75 |
| 2010 | 197,100.00 | 174,000.00 | 23,100.00 | - | - [4] | - | - | 508.20 | 22,591.80 | 5,868.00 [3] | 16,723.80 | 0.69% | 115.95 | 22,707.75 |
| 2011 | 197,100.00 | 174,000.00 | 23,100.00 | - | - [4] | - | - | 508.20 | 22,591.80 | 5,868.00 [3] | 16,723.80 | 0.34% | 56.36 | 22,648.16 |
| 2012 | 197,100.00 | 174,000.00 | 23,100.00 | - | - [4] | - | - | 508.20 | 22,591.80 | 5,868.00 [3] | 16,723.80 | 0.13% | 21.19 | 22,612.99 |
| 2013 | 82,125.00 | 72,500.00 | 9,625.00 | - | - [4] | - | - | 211.75 | 9,413.25 | 2,445.00 [3] | 6,968.25 | 0.03% | 2.32 | 9,415.57 |
| Period | | | $ 200,025.00 | $ - | $ - | $ - | $ - | $ 4,400.55 | $ 195,624.45 | | | | $ 12,258.09 | $ 207,882.54 |

Income Tax (28% on Lost Compensation less JSAS)  $ 54,774.85
Medicare Tax (1.45% on Lost Compensation less JSAS)  N/A

**Payment Amount  $ 153,107.69**

[1] Federal Judges are paid on the first of each month for services rendered in the previous month.  2013 includes five months.

[2] Equals the increase in the amount of Lost Earnings Before Interest [i.e., Lost Salary less Avoided Payroll Deductions from 2006 to 2007, as shown in Column (H)].

[3] Equals the increase in the amount of Lost Earnings Before Interest from 2009 to 2010 plus the increase in the amount of Lost Earnings Before Interest from 2006 to 2007.

[4] Assumed Senior Status on April 12, 1994; no Medicare Taxes are incurred after that date.

**Lost Earnings, Interest and Payment Amount**
**For Pay Periods January 2003 through May 2013 [1]**

**(U.W. Clemon - District Judge)**

| Year | Allowable Compensation | Actual Compensation | Lost Compensation | Avoided Payroll Deductions | | | | | Lost Earnings (Net Back Pay) | Salary Increases Not Authorized In 2007 and 2010 | Lost Earnings Subject to Interest | Interest through 05/2013 | | Net Back Pay Plus Interest |
| | | | | Federal Income Taxes | Medicare Taxes | FEGLI Basic Premiums | FEGLI Option B Premiums | JSAS Contributions | | | | Cumulative Percent | Amount | |
| | (A) | (B) | (A) - (B) (C) | (C) x 28.0% (D) | (C) x 1.45% (E) | (F) | (G) | (C) x 2.20% (H) | (C) - SUM[(D)-(H)] (I) | (J) | (I) - (J) (K) | (L) | (K) x (L) (M) | (I) + (M) (N) |
| 2003 | $ 169,800.00 | $ 154,700.00 | $ 15,100.00 | $ - | $ - | $ - | $ - | $ - | $ 15,100.00 | -- | $ 15,100.00 | 20.23% | $ 3,054.75 | $ 18,154.75 |
| 2004 | 173,500.00 | 158,100.00 | 15,400.00 | - | - | - | - | - | 15,400.00 | -- | 15,400.00 | 18.63% | 2,869.64 | 18,269.64 |
| 2005 | 177,800.00 | 162,100.00 | 15,700.00 | - | - | - | - | - | 15,700.00 | -- | 15,700.00 | 16.32% | 2,562.94 | 18,262.94 |
| 2006 | 181,200.00 | 165,200.00 | 16,000.00 | - | - | - | - | - | 16,000.00 | -- | 16,000.00 | 12.37% | 1,978.66 | 17,978.66 |
| 2007 | 184,300.00 | 165,200.00 | 19,100.00 | - | - | - | - | - | 19,100.00 | 3,100.00 [2] | 16,000.00 | 7.37% | 1,178.51 | 20,278.51 |
| 2008 | 188,900.00 | 169,300.00 | 19,600.00 | - | - | - | - | - | 19,600.00 | 3,100.00 [2] | 16,500.00 | 3.04% | 500.80 | 20,100.80 |
| 2009 | 16,183.33 | 14,500.00 | 1,683.33 | - | - | - | - | - | 1,683.33 | 258.33 [2] | 1,425.00 | 1.10% | 15.69 | 1,699.01 |

**Judge Clemon Retired on January 31, 2009**

| Year | Allowable Compensation | Actual Compensation | Lost Compensation | Avoided Deductions | | | | | Lost Earnings (Net Back Pay) | Salary Increase Not Authorized In 2007 | Lost Benefit Subject to Interest | Interest through 05/2013 | | Net Back Pay Plus Interest |
| | | | | Federal Income Taxes | Medicare Taxes [3] | FEGLI Basic Premiums | FEGLI Option B Premiums | JSAS Contributions | | | | Cumulative Percent | Amount | |
| | (A) | (B) | (A) - (B) (C) | (C) x 28.0% (D) | (E) | (F) | (G) | (C) x 3.50% (H) | (C) - SUM[(D)-(H)] (I) | (J) | (I) - (J) (K) | (L) | (K) x (L) (M) | (I) + (M) (N) |
| 2009 | $ 178,016.67 [4] | $ 159,500.00 | $ 18,516.67 | $ - | $ - | $ - | $ - | $ - | $ 18,516.67 | $ 2,841.67 [3] | $ 15,675.00 | 1.10% | $ 172.60 | $ 18,689.27 |
| 2010 | 194,200.00 [4] | 174,000.00 | 20,200.00 | - | - | - | - | - | 20,200.00 | 3,100.00 [3] | 17,100.00 | 0.69% | 118.56 | 20,318.56 |
| 2011 | 194,200.00 [4] | 174,000.00 | 20,200.00 | - | - | - | - | - | 20,200.00 | 3,100.00 [3] | 17,100.00 | 0.34% | 57.63 | 20,257.63 |
| 2012 | 194,200.00 [4] | 174,000.00 | 20,200.00 | - | - | - | - | - | 20,200.00 | 3,100.00 [3] | 17,100.00 | 0.13% | 21.67 | 20,221.67 |
| 2013 | 80,916.67 [4] | 72,500.00 | 8,416.67 | - | - | - | - | - | 8,416.67 | 1,291.67 [3] | 7,125.00 | 0.03% | 2.38 | 8,419.05 |
| Total | | | $ 190,116.67 | $ - | $ - | $ - | $ - | $ - | $ 190,116.67 | | | | $ 12,533.83 | $ 202,650.50 |

Income Tax (28% on Lost Compensation less JSAS)  $ 53,232.67
Medicare Tax (1.45% on Lost Compensation less JSAS)  $ 1,487.46

**Payment Amount  $ 147,930.37**

[1] Federal Judges are paid on the first of each month for services rendered in the previous month.  2013 includes five months.

[2] Equals the increase in the amount of Lost Earnings Before Interest [i.e., Lost Salary less Avoided Payroll Deductions from 2006 to 2007, as shown in Column (H)].

[3] Medicare deductions ceased for Judge Clemon after his retirement.

[4] The annual retirement compensation benefit received by a retired judge is equal to the annual salary as of the date of retirement ($194,200.00 for Judge Clemon). There are no future increases.

**Lost Earnings, Interest and Payment Amount**
**For Pay Periods January 2003 through May 2013 [1]**

**(Terry J. Hatter, Jr. - District Judge)**

| Year | Allowable Compensation (A) | Actual Compensation (B) | Lost Compensation (A) - (B) (C) | Federal Income Taxes (C) x 28.0% (D) | Medicare Taxes (C) x 1.45% (E) | FEGLI Basic Premiums (F) | FEGLI Option B Premiums (G) | JSAS Contributions (C) x 2.20% (H) | Lost Earnings (Net Back Pay) (C) - SUM[(D)-(H)] (I) | Salary Increases Not Authorized In 2007 and 2010 (J) | Lost Earnings Subject to Interest (I) - (J) (K) | Cumulative Percent (L) | Amount (K) x (L) (M) | Net Back Pay Plus Interest (I) + (M) (N) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2003 | $ 169,800.00 | $ 154,700.00 | $ 15,100.00 | $  - | $  - | $  - | $  - | 332.20 | $ 14,767.80 | -- | $ 14,767.80 | 20.23% | $ 2,987.55 | $ 17,755.35 |
| 2004 | 173,500.00 | 158,100.00 | 15,400.00 | - | - | - | - | 338.80 | 15,061.20 | -- | 15,061.20 | 18.63% | 2,806.51 | 17,867.71 |
| 2005 | 177,800.00 | 162,100.00 | 15,700.00 | - | - [4] | - | - | 345.40 | 15,354.60 | -- | 15,354.60 | 16.32% | 2,506.56 | 17,861.16 |
| 2006 | 181,200.00 | 165,200.00 | 16,000.00 | - | - [4] | - | - | 352.00 | 15,648.00 | -- | 15,648.00 | 12.37% | 1,935.13 | 17,583.13 |
| 2007 | 184,300.00 | 165,200.00 | 19,100.00 | - | - [4] | - | - | 420.20 | 18,679.80 | 3,031.80 [2] | 15,648.00 | 7.37% | 1,152.58 | 19,832.38 |
| 2008 | 188,900.00 | 169,300.00 | 19,600.00 | - | - [4] | - | - | 431.20 | 19,168.80 | 3,031.80 [2] | 16,137.00 | 3.04% | 489.79 | 19,658.59 |
| 2009 | 194,200.00 | 174,000.00 | 20,200.00 | - | - [4] | - | - | 444.40 | 19,755.60 | 3,031.80 [2] | 16,723.80 | 1.10% | 184.15 | 19,939.75 |
| 2010 | 197,100.00 | 174,000.00 | 23,100.00 | - | - [4] | - | - | 508.20 | 22,591.80 | 5,868.00 [3] | 16,723.80 | 0.69% | 115.95 | 22,707.75 |
| 2011 | 197,100.00 | 174,000.00 | 23,100.00 | - | - [4] | - | - | 508.20 | 22,591.80 | 5,868.00 [3] | 16,723.80 | 0.34% | 56.36 | 22,648.16 |
| 2012 | 197,100.00 | 174,000.00 | 23,100.00 | - | - [4] | - | - | 508.20 | 22,591.80 | 5,868.00 [3] | 16,723.80 | 0.13% | 21.19 | 22,612.99 |
| 2013 | 82,125.00 | 72,500.00 | 9,625.00 | - | - [4] | - | - | 211.75 | 9,413.25 | 2,445.00 [3] | 6,968.25 | 0.03% | 2.32 | 9,415.57 |
| Period | | | $ 200,025.00 | $  - | $  - | $  - | $  - | $ 4,400.55 | $ 195,624.45 | | | | $ 12,258.09 | $ 207,882.54 |

Income Tax (28% on Lost Compensation less JSAS)     $ 54,774.85
Medicare Tax (1.45% on Lost Compensation less JSAS)  $    488.18

**Payment Amount**   $ 152,619.51

[1] Federal Judges are paid on the first of each month for services rendered in the previous month.  2013 includes five months.

[2] Equals the increase in the amount of Lost Earnings Before Interest [i.e., Lost Salary less Avoided Payroll Deductions from 2006 to 2007, as shown in Column (H)].

[3] Equals the increase in the amount of Lost Earnings Before Interest from 2009 to 2010 plus the increase in the amount of Lost Earnings Before Interest from 2006 to 2007.

[4] Assumed Senior Status on April 22, 2005; no Medicare Taxes are incurred after that date.

**Lost Earnings, Interest and Payment Amount**
**For Pay Periods January 2003 through May 2013 [1]**

**(Richard A. Paez – Circuit Judge)**

| Year | Allowable Compensation | Actual Compensation | Lost Compensation | Avoided Payroll Deductions | | | | | Lost Earnings (Net Back Pay) | Salary Increases Not Authorized In 2007 and 2010 | Lost Earnings Subject to Interest | Interest through 05/2013 | | Net Back Pay Plus Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Federal Income Taxes | Medicare Taxes | FEGLI Basic Premiums | FEGLI Option B Premiums | JSAS Contributions | | | | Cumulative Percent | Amount | |
| | (A) | (B) | (A) - (B) (C) | (C) x 28.0% (D) | (C) x 1.45% (E) | (F) | (G) | (C) x 2.20% (H) | (C) - SUM[(D)-(H)] (I) | (J) | (I) - (J) (K) | (L) | (K) x (L) (M) | (I) + (M) (N) |
| 2003 | $ 180,000.00 | $ 164,000.00 | $ 16,000.00 | $ - | $ - | $ - | $ - | $ 352.00 | $ 15,648.00 | – | $ 15,648.00 | 20.23% | $ 3,165.61 | $ 18,813.61 |
| 2004 | 184,000.00 | 167,600.00 | 16,400.00 | - | - | - | - | 360.80 | 16,039.20 | – | 16,039.20 | 18.63% | 2,988.75 | 19,027.95 |
| 2005 | 188,600.00 | 171,800.00 | 16,800.00 | - | - | - | - | 369.60 | 16,430.40 | – | 16,430.40 | 16.32% | 2,682.18 | 19,112.58 |
| 2006 | 192,200.00 | 175,100.00 | 17,100.00 | - | - | - | - | 376.20 | 16,723.80 | – | 16,723.80 | 12.37% | 2,068.17 | 18,791.97 |
| 2007 | 195,500.00 | 175,100.00 | 20,400.00 | - | - | - | - | 448.80 | 19,951.20 | 3,227.40 [2] | 16,723.80 | 7.37% | 1,231.82 | 21,183.02 |
| 2008 | 200,400.00 | 179,500.00 | 20,900.00 | - | - | - | - | 459.80 | 20,440.20 | 3,227.40 [2] | 17,212.80 | 3.04% | 522.44 | 20,962.64 |
| 2009 | 206,000.00 | 184,500.00 | 21,500.00 | - | - | - | - | 473.00 | 21,027.00 | 3,227.40 [2] | 17,799.60 | 1.10% | 195.99 | 21,222.99 |
| 2010 | 209,100.00 | 184,500.00 | 24,600.00 | - | - | - | - | 541.20 | 24,058.80 | 6,259.20 [3] | 17,799.60 | 0.69% | 123.41 | 24,182.21 |
| 2011 | 209,100.00 | 184,500.00 | 24,600.00 | - | - | - | - | 541.20 | 24,058.80 | 6,259.20 [3] | 17,799.60 | 0.34% | 59.99 | 24,118.79 |
| 2012 | 209,100.00 | 184,500.00 | 24,600.00 | - | - | - | - | 541.20 | 24,058.80 | 6,259.20 [3] | 17,799.60 | 0.13% | 22.55 | 24,081.35 |
| 2013 | 87,125.00 | 76,875.00 | 10,250.00 | - | - [4] | - | - | 225.50 | 10,024.50 | 2,608.00 [3] | 7,416.50 | 0.03% | 2.47 | 10,026.97 |
| Period | | | $ 213,150.00 | $ - | $ - | $ - | $ - | $ 4,689.30 | $ 208,460.70 | | | | $ 13,063.38 | $ 221,524.08 |

Income Tax (28% on Lost Compensation less JSAS)   $ 58,369.00
Medicare Tax (1.45% and 2.35% on Lost Compensation less JSAS)   $ 3,098.83

**Payment Amount**   $ 160,056.26

[1] Federal Judges are paid on the first of each month for services rendered in the previous month. 2013 includes five months.

[2] Equals the increase in the amount of Lost Earnings Before Interest [i.e., Lost Salary less Avoided Payroll Deductions from 2006 to 2007, as shown in Column (H)].

[3] Equals the increase in the amount of Lost Earnings Before Interest from 2009 to 2010 plus the increase in the amount of Lost Earnings Before Interest from 2006 to 2007.

[4] Beginning in 2013, Medicare taxes increase to 2.35% on earned income in excess of $200,000 per year. Since this analysis is only through May, 1.45% is still used.

**Lost Earnings, Interest and Payment Amount**
**For Pay Periods January 2003 through May 2013 [1]**

**(Laurence H. Silberman - Circuit Judge)**

| Year | Allowable Compensation (A) | Actual Compensation (B) | Lost Compensation (A) - (B) (C) | Avoided Payroll Deductions | | | | | Lost Earnings (Net Back Pay) (C) - SUM[(D)-(H)] (I) | Salary Increases Not Authorized in 2007 and 2010 (J) | Lost Earnings Subject to Interest (I) - (J) (K) | Interest through 05/2013 | | Net Back Pay Plus Interest (I) + (M) (N) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Federal Income Taxes (C) x 28.0% (D) | Medicare Taxes (C) x 1.45% (E) | FEGLI Basic Premiums (F) | FEGLI Option B Premiums (G) | JSAS Contributions (C) x 2.20% (H) | | | | Cumulative Percent (L) | Amount (K) x (L) (M) | |
| 2003 | $ 180,000.00 | $ 164,000.00 | $ 16,000.00 | $  - | $  - | $  - | $  - | $ 352.00 | $ 15,648.00 | -- | $ 15,648.00 | 20.23% | $ 3,165.61 | $ 18,813.61 |
| 2004 | 184,000.00 | 167,600.00 | 16,400.00 | - | - [4] | - | - | 360.80 | 16,039.20 | -- | 16,039.20 | 18.63% | 2,988.75 | 19,027.95 |
| 2005 | 188,600.00 | 171,800.00 | 16,800.00 | - | - [4] | - | - | 369.60 | 16,430.40 | -- | 16,430.40 | 16.32% | 2,682.18 | 19,112.58 |
| 2006 | 192,200.00 | 175,100.00 | 17,100.00 | - | - [4] | - | - | 376.20 | 16,723.80 | -- | 16,723.80 | 12.37% | 2,068.17 | 18,791.97 |
| 2007 | 195,500.00 | 175,100.00 | 20,400.00 | - | - [4] | - | - | 448.80 | 19,951.20 | 3,227.40 [2] | 16,723.80 | 7.37% | 1,231.82 | 21,183.02 |
| 2008 | 200,400.00 | 179,500.00 | 20,900.00 | - | - [4] | - | - | 459.80 | 20,440.20 | 3,227.40 [2] | 17,212.80 | 3.04% | 522.44 | 20,962.64 |
| 2009 | 206,000.00 | 184,500.00 | 21,500.00 | - | - [4] | - | - | 473.00 | 21,027.00 | 3,227.40 [2] | 17,799.60 | 1.10% | 195.99 | 21,222.99 |
| 2010 | 209,100.00 | 184,500.00 | 24,600.00 | - | - [4] | - | - | 541.20 | 24,058.80 | 6,259.20 [3] | 17,799.60 | 0.69% | 123.41 | 24,182.21 |
| 2011 | 209,100.00 | 184,500.00 | 24,600.00 | - | - [4] | - | - | 541.20 | 24,058.80 | 6,259.20 [3] | 17,799.60 | 0.34% | 59.99 | 24,118.79 |
| 2012 | 209,100.00 | 184,500.00 | 24,600.00 | - | - [4] | - | - | 541.20 | 24,058.80 | 6,259.20 [3] | 17,799.60 | 0.13% | 22.55 | 24,081.35 |
| 2013 | 87,125.00 | 76,875.00 | 10,250.00 | - | - [4] | - | - | 225.50 | 10,024.50 | 2,608.00 [3] | 7,416.50 | 0.03% | 2.47 | 10,026.97 |
| Period | | | $ 213,150.00 | $  - | $  - | $  - | $  - | $ 4,689.30 | $ 208,460.70 | | $ 13,063.38 | | | $ 221,524.08 |

Income Tax (28% on Lost Compensation less JSAS)     $ 58,369.00
Medicare Tax (1.45% on Lost Compensation less JSAS)     N/A

**Payment Amount     $ 163,155.08**

[1] Federal Judges are paid on the first of each month for services rendered in the previous month. 2013 includes five months.

[2] Equals the increase in the amount of Lost Earnings Before Interest [i.e., Lost Salary less Avoided Payroll Deductions from 2006 to 2007, as shown in Column (H)].

[3] Equals the increase in the amount of Lost Earnings Before Interest from 2009 to 2010 plus the increase in the amount of Lost Earnings Before Interest from 2006 to 2007.

[4] Assumed Senior Status on November 1, 2000; no Medicare Taxes are incurred after that date.

**Lost Earnings, Interest and Payment Amount**
**For Pay Periods January 2003 through May 2013** [1]

**(A. Wallace Tashima - Circuit Judge)**

| Year | Allowable Compensation (A) | Actual Compensation (B) | Lost Compensation (A) - (B) (C) | Avoided Payroll Deductions | | | | | Lost Earnings (Net Back Pay) (C) - SUM[(D)-(H)] (I) | Salary Increases Not Authorized In 2007 and 2010 (J) | Lost Earnings Subject to Interest (I) - (J) (K) | Interest through 05/2013 | | Net Back Pay Plus Interest (I) + (M) (N) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Federal Income Taxes (C) x 28.0% (D) | Medicare Taxes (C) x 1.45% (E) | FEGLI Basic Premiums (F) | FEGLI Option B Premiums (G) | JSAS Contributions (C) x 2.20% (H) | | | | Cumulative Percent (L) | Amount (K) x (L) (M) | |
| 2003 | $ 180,000.00 | $ 164,000.00 | $ 16,000.00 | $ - | $ - | $ - | $ - | $ 352.00 | $ 15,648.00 | -- | $ 15,648.00 | 20.23% | $ 3,165.61 | $ 18,813.61 |
| 2004 | 184,000.00 | 167,600.00 | 16,400.00 | - | - | - | - | 360.80 | 16,039.20 | -- | 16,039.20 | 18.63% | 2,988.75 | 19,027.95 |
| 2005 | 188,600.00 | 171,800.00 | 16,800.00 | - | - [4] | - | - | 369.60 | 16,430.40 | -- | 16,430.40 | 16.32% | 2,682.18 | 19,112.58 |
| 2006 | 192,200.00 | 175,100.00 | 17,100.00 | - | - [4] | - | - | 376.20 | 16,723.80 | -- | 16,723.80 | 12.37% | 2,068.17 | 18,791.97 |
| 2007 | 195,500.00 | 175,100.00 | 20,400.00 | - | - [4] | - | - | 448.80 | 19,951.20 | 3,227.40 [2] | 16,723.80 | 7.37% | 1,231.82 | 21,183.02 |
| 2008 | 200,400.00 | 179,500.00 | 20,900.00 | - | - [4] | - | - | 459.80 | 20,440.20 | 3,227.40 [2] | 17,212.80 | 3.04% | 522.44 | 20,962.64 |
| 2009 | 206,000.00 | 184,500.00 | 21,500.00 | - | - [4] | - | - | 473.00 | 21,027.00 | 3,227.40 [2] | 17,799.60 | 1.10% | 195.99 | 21,222.99 |
| 2010 | 209,100.00 | 184,500.00 | 24,600.00 | - | - [4] | - | - | 541.20 | 24,058.80 | 6,259.20 [3] | 17,799.60 | 0.69% | 123.41 | 24,182.21 |
| 2011 | 209,100.00 | 184,500.00 | 24,600.00 | - | - [4] | - | - | 541.20 | 24,058.80 | 6,259.20 [3] | 17,799.60 | 0.34% | 59.99 | 24,118.79 |
| 2012 | 209,100.00 | 184,500.00 | 24,600.00 | - | - [4] | - | - | 541.20 | 24,058.80 | 6,259.20 [3] | 17,799.60 | 0.13% | 22.55 | 24,081.35 |
| 2013 | 87,125.00 | 76,875.00 | 10,250.00 | - | - | - | - | 225.50 | 10,024.50 | 2,608.00 [3] | 7,416.50 | 0.03% | 2.47 | 10,026.97 |
| Period | | | $ 213,150.00 | $ - | $ - | $ - | $ - | $ 4,689.30 | $ 208,460.70 | | | | $ 13,063.38 | $ 221,524.08 |

Income Tax (28% on Lost Compensation less JSAS)        $  58,369.00
Medicare Tax (1.45% on Lost Compensation less JSAS)    $     343.18

**Payment Amount  $ 162,811.90**

[1] Federal Judges are paid on the first of each month for services rendered in the previous month. 2013 includes five months.

[2] Equals the increase in the amount of Lost Earnings Before Interest [i.e., Lost Salary less Avoided Payroll Deductions from 2006 to 2007, as shown in Column (H)].

[3] Equals the increase in the amount of Lost Earnings Before Interest from 2009 to 2010 plus the increase in the amount of Lost Earnings Before Interest from 2006 to 2007.

[4] Assumed Senior Status on June 30, 2004; no Medicare Taxes are incurred after that date.